# UNITED STATES BANKRUTPCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 7 |
| JOSEPH MICHAEL HENDEL, | Case No. 22-13102-AMC |
| Debtor. | |
| JOSEPH MICHAEL HENDEL, | |
| Plaintiff | |
| v. | Adv. No. 23-00019-AMC |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, et al., | |
| Defendants. | |

**OPINION**

Ashely M. Chan, Chief United States Bankruptcy Judge.

## I.     INTRODUCTION

In this adversary proceeding, Joseph Michael Hendel (the "Debtor" or "Plaintiff"), appearing *pro se*, seeks a determination that loans he borrowed to finance his daughter's higher education are dischargeable under § 523(a)(8) of the Bankruptcy Code. However, based primarily on Debtor's acknowledgement that he currently can afford to make payments towards the loans since he recently began receiving social security payments in addition to his other family income, the Court is constrained to conclude that excepting this debt from discharge would not impose an undue hardship, rendering the debt nondischargeable pursuant to § 523(a)(8) of the Bankruptcy Code.

1

## II.    FACTS AND PROCEDURAL HISTORY

On June 12, 2005, Debtor executed and delivered an "Application/Promissory Note Consolidation Loan" ("Application") to American Education Services ("AES") seeking funds to pay the college tuition for his daughter, Stephanie Hendel Tarnofsky ("Daughter"), to attend Pennsylvania State University ("Penn State"). Case No. 23-00019 ECF 50 ("Joint Stmt.") ¶¶ B.8-9; ECF 55 ("Trial Tr.") 11:1-2. Debtor's Application was approved, and he received three loans ("Loans") guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA"). Joint Stmt. ¶¶ B.8-9. The Debtor is the only obligated party on these Loans. Joint Stmt. ¶ B.8; Trial Tr. 46:25–47:2.

Debtor's Daughter attended Penn State from 2005 to 2009. Trial Tr. 11:1-2. After his Daughter graduated college in 2009, the Debtor accepted an offer for deferment of payments on the Loans, and the Loans have remained in deferment for nearly the entire life of the Loans. Joint Stmt. ¶ B.11; Trial Tr. 12:9-13, 14:25-15:3. Debtor has never applied for any income contingent or income-based repayment plan for the Loans. Joint Stmt. ¶ B.19. The Debtor has made a total of $2,400 in payments toward the Loans. Trial Tr. 75:10–13, Ex. 9 at 12. The Debtor has not made any payments on the Loans since November 14, 2022. Joint Stmt. ¶ B.22.

The Debtor filed a chapter 7 bankruptcy petition on November 18, 2022 ("Petition Date"). *Id.* at ¶ B.4. As of the Petition Date, the Debtor was indebted to PHEAA on the Loans. *Id.* at ¶ B.13. On March 6, 2023, Debtor commenced the instant adversary proceeding against PHEAA, AES, and the United States Department of Education ("DOE"), seeking to have the Loans declared dischargeable pursuant to § 523(a)(8) as imposing an undue hardship. *Id.* at ¶ B.5.

2

On May 23, 2023, Educational Credit Management Corporation ("ECMC") accepted an assignment of the Loans from PHEAA. *Id.* at ¶ B.15. On June 14, 2023, this Court granted ECMC's motion to intervene in light of the Loans having been assigned to ECMC. *Id.* at ¶ B.6. The outstanding principal balance on the Loans as of June 2023 was $54,124.16. *Id.* at ¶ B.14.

On November 24, 2024, the Debtor and ECMC filed a joint pre-trial statement stipulating to a number of uncontested facts. *See generally* Joint Stmt. The only question of fact in dispute prior to trial was whether the Debtor lacked the resources to fulfill his obligation to pay the Loans. Joint Stmt. ¶ C.1.

On March 6, 2025, a trial was held ("Trial") where Debtor, representing himself *pro se*, offered testimony reflecting that he and his wife, both of whom are now in their 70s, have dealt with myriad financial troubles since their Daughter started college. Case No. 23-00019 ECF 54; Trial Tr. 8:7, 8:23-9:4. In 2006, Debtor lost his long-held job at a pharmaceutical company. Joint Stmt. ¶ B.30; Trial Tr. 11:2-7, 54:3–8. He subsequently had to find work in a variety of different industries, including real estate and long-distance, limo, and ride-share driving. Trial Tr. 8:13–21, 56:1–4. Both Debtor and his wife still work with no plans to retire, have downsized their home, and have taken no self-funded vacations in the last decade. Trial Tr. 8:13–21, 9:4–10:11, 62:23-24; Joint Stmt. ¶ B.41. Debtor's wife owns their current manufactured home ("Home"), which she purchased in August 2022, though Debtor contributes to paying the mortgage on the Home and used $23,000 from his IRA account as a down payment on the Home. Joint Stmt. ¶¶ B.25, 26, 27; Trial Tr. 47:14-16, 48:10-18, 49:1-5, 21, 50:5-6.

The Debtor has never asked his Daughter to make any payments toward the Loans, in no small part due to her own troubles: her husband tragically passed in the last year, and she is now a single mother of two young children. Joint Stmt. ¶ B.12; Trial Tr. 13:13–17. The Debtor and his

3

wife do their best to support their Daughter and grandchildren, and any caregiving assistance they are able to provide is paid back by their Daughter. Trial Tr. 51:12–14, 53:9–11.

The Hendels waited until they each turned 70 to collect their social security benefits, starting in September 2024, in order to receive the maximum amount allowed. Trial Tr. 8:8–10; Joint. Stmt. ¶ B.40. Significantly, at Trial, the Debtor explained that since he and his wife have begun collecting social security in addition to their income from employment, he now has a current ability to make payments towards the Loans, but he fears they will face hardship at some future time due to aging and other expenses which may arise. Trial Tr. 17:21–25, 30:6-17, 31:4-25. However, as mentioned, neither the Debtor, who continues to be employed as a real estate agent and still regularly works as a driver, nor his wife, who currently works as a medical assistant, have any plans to retire. Joint Stmt. ¶ B.41; Trial Tr. 8:13-16, 31:6-7.

### III. DISCUSSION

Upon consideration of the evidence presented at Trial, the Court concludes that because the Debtor has a present ability to pay his minimal living expenses and make payments towards the Loans, he does not qualify to have the Loans discharged for undue hardship pursuant to § 523(a)(8).

#### A. The *Brunner* Test for Undue Hardship

Section 523(a)(8) of the Bankruptcy Code excludes certain loans from the general discharge available under chapter 7. This section provides:

> (a) [a] discharge under section 727 . . . *does not discharge an individual debtor from any debt—*
> (8) *unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—*
> > (A)(i) *an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit*, or made under any program

4

>funded in whole or in part by a governmental unit or nonprofit institution; or
>(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . . .

11 U.S.C. § 523(a)(8) (emphasis added).

Both parties have stipulated that the Loans are educational loans as described in § 523(a)(8). Joint Stmt. ¶ B.23. The Court of Appeals for the Third Circuit ("Third Circuit") has adopted the three-part test set forth in *Brunner v. New York State Higher Education Services Corporation*, 831 F.2d 395 (2d Cir. 1987) to determine whether excepting an educational loan from discharge would result in "undue hardship." *Pa. Higher Educ. Assist. Agency v. Faish (In re Faish)*, 72 F.3d 298, 305-06 (3d Cir. 1995). Under *Brunner*, a debtor must show:

>(1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans;
>(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and
>(3) that the debtor has made good faith efforts to repay the loans.

*Brightful v. Pa. Higher Educ. Asst. Agency (In re Brightful)*, 267 F.3d 324, 327 (3d Cir. 2001). The debtor bears the burden of proving all three elements of the *Brunner* test by a preponderance of the evidence. *Id.* If the debtor fails to establish even one *Brunner* element, the student loans cannot be discharged. *In re Faish*, 72 F.3d at 306. Bankruptcy courts must not weigh equitable concerns or other extraneous factors not contemplated by the *Brunner* framework to support a nondischargeability finding. *Id.* The *Brunner* test is the "definitive, exclusive authority" bankruptcy courts must use to determine whether the undue hardship exception applies.[1] *Id.*

---

[1] During the Trial, Debtor explained that guidance issued by the U.S. Department of Justice ("DOJ") had motivated him to seek discharge of the Loans, and he expressed frustration that the Court could not consider the guidance in

5

### B. The Debtor has not shown he cannot maintain a minimal standard of living if forced to repay the Loans.

Under the first prong of the *Brunner* test, the Debtor must show that he cannot maintain a "minimal standard of living" if forced to repay the Loans. *In re Brightful*, 267 F.3d at 328. Bankruptcy courts, in this district and others, have assessed the imperfect contours of a "minimal standard of living" at length. *See, e.g.*, *Jones v. Educ. Credit Mgmt. Corp. (In re Jones)*, 495 B.R. 674, 685 (Bankr. E.D. Pa. 2013) (listing elements of a minimum standard of living for a debtor as outlined in *In re Ivory*, 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001)); *In re Miller*, 409 B.R. 299, 311 (Bankr. E.D. Pa. 2009) ("The upper limits of a minimal standard of living generally allow for a debtor to purchase 'the basic necessities, such as food, clothing, housing and medical treatment.' . . . After providing for his or her basic needs, a debtor may not use her . . . financial resources for discretionary expenditures in lieu of repaying student loan creditors."). A mere showing of "tight finances" will not satisfy the debtor's high burden, especially if the debtor could make the loan payments by engaging in "short-term belt tightening." *In re Faish*, 72 F.3d at 306.

---

making its dischargeability determination. Trial Tr. 32:23-33:1, 39:10-15. By way of background, in 2022, the DOJ published a memorandum providing guidance ("Guidance") to its attorneys regarding requests to discharge student loans in bankruptcy cases. 4 Collier on Bankruptcy P 523.14[5a]. The Guidance sets out procedures designed to reduce debtors' burdens in pursuing an adversary proceeding through simplifying the fact-gathering process and increase the number of cases where the government stipulates to the facts demonstrating a debt would impose an undue hardship and recommends to the court that a debtor's student loans be discharged. *Id.* The Guidance employs the three-part *Brunner* framework for evaluating student loan dischargeability. *Id.* In connection with the first factor, the Guidance evaluates a debtor's ability to make payments on student loans while maintaining a minimal standard of living by reference to the Internal Revenue Service Collection Financial Standards. *Id.* For the second inquiry, the Guidance employs certain rebuttable presumptions for determining whether a present inability to repay is likely to persist, including the debtor is age 65 or older, has a disability or chronic injury impacting income potential, has been unemployed for five of the last ten years, or has failed to obtain the degree for which the loan was procured. *Id.* Finally, for the third factor, the Guidance identifies certain objective criteria that evidence a borrower's good faith. *Id.* Ultimately, this Guidance is intended to assist DOJ attorneys with making undue hardship determinations to assess whether a voluntary recommendation of dischargeability is warranted. It is not in any way intended to displace the legal standards this Court must consider in order to determine the dischargeability of student loans.

Here, while Debtor and his wife have faced their share of financial hardships, Debtor admits that he has a current ability to afford to pay the Loans without sacrificing his standard of living since increasing his monthly household income through social security. As such, because Debtor has admitted he can pay the Loans now while maintaining a minimal standard of living, Debtor has not satisfied this element of the *Brunner* test.[2]

### C. Debtor has not demonstrated circumstances reflecting any particular hardship will likely persist during the repayment period, nor has he demonstrated good faith efforts prepetition to repay the Loans.

Because Debtor has not established the first prong of the *Brunner* test, this Court is not required to consider the remaining *Brunner* factors. *In re Faish*, 72 F.3d at 306 ("If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability."). However, even if the Court were to consider the remaining factors, the evidence would not support a finding of dischargeability under either the second or third elements of *Brunner*.

The second prong requires a debtor to demonstrate that a hardship is "likely to persist for a significant portion" of time. *In re Brightful*, 276 B.R. at 327. Stated another way, a debtor must demonstrate that "additional circumstances exist indicating that [the debtor's present state of economic distress] is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396; *In re Carlson*, 273 B.R. 481, 485 (Bankr. D. S.C., 2001). A debtor must show "a total incapacity . . . in the future to pay [her] debts for reasons not within her control." *In re Brightful*, 276 B.R. at 328 (internal citations omitted). Circumstances tending to demonstrate that a debtor's current financial hardship will continue for a substantial

---

[2] Perhaps, if the Debtor had chosen to file his bankruptcy petition at a later date—when there was no longer a current ability to make loan payments—the Court may have reached a different conclusion with respect to this factor. The Court does not reach this question today.

7

period include "long-term physical or mental problems precluding employment, lack of marketable job skills, or the necessity of fully supporting several dependents which precludes sufficient income." *Sperazza v. Educ. Credit Mgmt. Corp. (In re Speranzza)*, 366 B.R. 397, 411, 411 (Bankr. E.D. Pa., 2007). Ultimately, the second prong seeks to ensure that dischargeability of student loans is "based upon the certainty of hopelessness, not simply a present inability to fulfill financial commitment." *In re Brightful,* 267 F.3d at 328.

      The Debtor testified at Trial that he fears as he and his wife age, they will eventually find themselves unable to work in the future, causing them financial hardship. These fears, while understandable, are based on speculation at this point. Presently, Debtor and his wife are both gainfully employed with no plans to retire. Debtor has not identified any long-term disability or medical problems which would preclude them from working. In fact, the evidence at Trial demonstrated that both Debtor and his wife possess a variety of marketable skills. Based on that, the second element of the *Brunner* test has not been satisfied, particularly in the absence of any details regarding a prospective retirement.

      The third and final prong of the *Brunner* test examines a debtor's good faith in attempting to repay the student loans. *In re Brightful*, 276 B.R. at 327. The Debtor, in the almost twenty years between taking the Loans and filing this bankruptcy case, only made payments totaling $2,400, and allowed the Loans to remain in deferment for a significant period. The Debtor failed to participate in any income-driven repayment plans available to him that might have assisted in carving out some payments toward the Loans over this period of time. Under the totality of the circumstances established on the record, this Court cannot find the Debtor made good faith efforts to repay the Loans.

8

The Debtor, whom the Court commends as a very credible witness, makes his case under sympathetic circumstances. However, the Third Circuit has made explicitly clear that "[e]quitable concerns or other extraneous factors not contemplated by the *Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability." *In re Faish*, 72 F.3d at 306.

## IV.     CONCLUSION

For the foregoing reasons, this Court holds that the Loans are nondischargeable under 11 U.S.C. § 523(a)(8).

Date: May 2, 2025

ASHELY M. CHAN
Chief Judge, United States Bankruptcy Court